IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ROWENA STURDEVANT and JAMES DEAN STURDEVANT as Trustee of Rowena Sturdevant's Irrevocable Trust, | CV 20–118–M–DLC |
| Plaintiffs, | |
| vs. | ORDER |
| NATIONAL WESTERN LIFE INSURANCE CO., a Texas corporation, | |
| Defendant. | |

Before the Court is United States Magistrate Judge Kathleen L. DeSoto's Findings and Recommendation. (Doc. 31.) Both parties have sought summary judgment. (*See generally* Docs. 15; 22.) Judge DeSoto recommends that this Court grant Defendant National Western Life Insurance Company's ("National Western") motion and deny Plaintiffs Rowena Sturdevant's and James Sturdevant's ("the Sturdevants") motion. (Doc. 31 at 32.) For the reasons stated herein, the Court will adopt Judge DeSoto's findings and recommendation in full, absent one objected to scrivener's error.

## BACKGROUND

Because this matter comes before the court upon summary judgment, the Court begins by outlining several undisputed facts. In early September 1975, National Western issued a life insurance policy ("the Policy") to Harold Sturdevant

1

with a limit of $200,000.  (*See generally* Doc. 26-1).  The Policy also contained a rider, providing for a waiver of premiums during any period in which the insured becomes totally and permanently disabled, provided certain proof and notice requirements are fulfilled ("the Rider").  (Doc. 26-2.)  The Rider and Policy had separate premiums.  (Doc. 29 at 2.)

The Policy initially listed Harold Sturdevant's wife, Rowena Sturdevant, as the beneficiary (Doc. 29 at 2), but at some point Rowena Sturdevant apparently assigned her rights to an irrevocable trust, in which her son, James Dean Sturdevant is the sole trustee.  Everything appeared to be well with the Policy and Harold Sturdevant until his check for the August 1979 premiums was returned for insufficient funds.  (*See generally* Doc. 25-2.)  National Western notified Harold Sturdevant of this issue by letter dated October 25, 1979, enclosing the rejected check and requesting premium payments for August, September, and October.  (*Id.*)

National Western followed up with another letter dated December 10, 1979, stating that while it had subsequently received premium payments for August and September, October remained unpaid.  (Doc. 25-3.)  As such, National Western stated that the Policy's grace period had expired and that a reinstatement form had to be completed in order to restore the Policy.  (*Id.*)  In February of 1980, National Western received a letter signed by Harold Sturdevant stating the Policy "was

certainly not intended to lapse" and enclosing a check as payment for overdue premiums. (Doc. 25-6.)[1]

National Western responded to this letter on February 22, 1980, stating that the Policy was terminated on October 4, 1979 and could only be restored upon payment of additional premiums and completion of a reinstatement form. (Doc. 25-8.) National Western received no reply and followed up with another letter on March 31, 1980 returning the check received in February of 1980 and notifying Harold Sturdevant that if he wished to "reapply for reinstatement of" the Policy at a future date, he could notify National Western and it would "forward the details." (Doc. 25-9.)

Then, in February 1981, National Western received a letter from a friend of Harold Sturdevant stating that he "has been disabled since June 1978" due to "an apparent physical condition that has caused some brain damage." (Doc. 25-10.) This letter sought information about obtaining a wavier of premiums pursuant to the Rider. (*Id.*) National Western responded on February 17, 1981, stating that this "was the first notice we had received of any disability," that it had repeatedly attempted to contact Harold Sturdevant regarding the Policy's termination and even received one response, and that because it was not notified of Harold

---

[1] Although this letter was signed "Harold Sturdevant," a 2016 letter from attorney Don Kelly indicates this letter "was written and signed in his name by his wife," Rowena Sturdevant. (Doc. 25-7 at 1.) The record is unclear as to whether she signed his name fraudulently or at his behest.

Sturdevant's ostensible total disability within 12 months of the October 4, 1979 termination date, the Rider's waiver of policy premiums provision was inapplicable.  (Doc. 25-11.)

Seven years later, in 1988, National Western and an attorney Raymond Tipp exchanged various letters regarding reinstatement of the Policy.  (*See generally* Docs. 25-12; 25-15; 25-16; 25-17.)  In these letters, Mr. Tipp expressed that Harold Sturdevant had been totally disabled since July of 1978, and, as such, the Rider's premium waiver was triggered, and the Policy remained in full force and effect.  Conversely, National Western maintained that Harold Sturdevant never timely notified it of his total disability as required in order to trigger the Rider and the Policy lapsed in October of 1979.  It does not appear the matter was pursued further until Harold Sturdevant died in May 2016 (Doc. 24 at 6) and attorney Don Kelley contacted National Western about paying the $200,000 benefit under the Policy.  National Western refused, outlining its position at length and holding steadfast in its view that the Policy was lapsed and afforded no coverage.  (*See generally* Doc. 27-19.)

Finally, in June of 2020, the Sturdevants filed suit in Montana state court complaining that National Western breached the Policy, breached the implied covenant of good faith and fair dealing, and requesting an unspecified declaration.[2]

---

[2] The complaint's declaratory judgment count alleges that Harold Sturdevant "was able to waive

(Doc. 7.)  The crux of this complaint is that National Western wrongfully terminated the Policy in October of 1979 and refused to accept a waiver of premiums pursuant to the Rider in February of 1981.  (*Id.*)

## STANDARD OF REVIEW

In the absence of an objection, this Court reviews findings for clear error. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).  Clear error review is "significantly deferential" and exists when the Court is left with a "definite and firm conviction that a mistake has been committed."  *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted).  Reviewing the unobjected to portions of Judge DeSoto's findings and recommendation for clear error, the Court finds none.

This Court reviews de novo any findings to which a party specifically objects.  28 U.S.C. § 636(b)(1)(C).  The Sturdevants have timely leveled various objections, which this Court splits into three categories.  First, the Sturdevants object to an ostensible factual error as to the date Harold Sturdevant died (Objection No. 1).  (Doc. 32 at 1.)   Second, the Sturdevants object to Judge

---

all future premiums" under the Policy due to being totally disabled but does not allege that he did so or otherwise enumerate the sort of declaratory relief sought.  (Doc. 7 at 3–4.)  The complaint's prayer for relief section does not request any declaratory relief and the Court must admit it remains totally unclear what sort of declaratory relief the Sturdevants' want.  Nonetheless, the gravamen of the complaint is that National Western wrongfully terminated the Policy in 1979, wrongfully refused to apply the Rider in 1981, and wrongfully refused to pay out the death benefit in 2016.

DeSoto's resolution of a statute of limitations issue (Objection Nos. 2, 4–5, 10). (*Id.* at 1–4, 6.)  Finally, the Sturdevants object to Judge DeSoto's resolution of what they assert are disputed issues of fact (Objections 3, 6–9).  (*Id.* at 2, 4–5.)  As such, the Court will review these portions of Judge DeSoto's findings and recommendation de novo.

**ANALYSIS**

As to the first objection—the date of Harold Sturdevant's death—the Court agrees that one portion of Judge DeSoto's findings and recommendation incorrectly lists the date of death as "September 2016," (Doc. 31 at 11), instead of May 2016.  It is undisputed that Harold Sturdevant passed away in May 2016. (Doc. 24 at 6.)  Because Judge DeSoto correctly enumerated the date of Harold Sturdevant's death in other portions of her findings and recommendation (Doc. 31 at 9), the Court is confident the disparity is the result of a scrivener's error.  As a final matter, the Court notes that the Sturdevants do not argue, nor does this Court find, that this oversight has any impact on adjudication of the respective motions for summary judgment or the propriety of Judge DeSoto's recommendations.

Turning to the second objection—the statute of limitations issue—the Court finds de novo review compels the same conclusion as Judge DeSoto.  As a threshold issue, when exercising diversity jurisdiction, federal courts apply the law of the forum state when adjudicating statue of limitations issues.  *Guaranty Trust*

*Co. of N.Y. v. York*, 326 U.S. 99, 109–10 (1945).  This is a diversity lawsuit asserting a declaratory judgment claim and claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  (Doc. 7 at 3–5.) Accordingly, the outcome of any statute of limitations issue in this case depends on Montana law.

Under Montana law, the statute of limitations for actions based on a "contract, obligation, or" other "instrument in writing is" 8 years.  Mont. Code Ann. § 27-2-202(1).  In other words, "[t]he statute of limitations for commencing an action on a written contract, including an insurance contract, is eight years from the date the claim accrues."  *Estate of Gleason v. Central United Life Ins. Co.*, 350 P.3d 349, 360 (Mont. 2015).  "A claim accrues when all elements of the claim have occurred" and an action commences "when the complaint is filed."  *Id.*  Applying these principles, the Court agrees with Judge DeSoto that Sturdevants' claims are time barred.

As stated above and as correctly noted by Judge DeSoto, the crux of Plaintiffs' claims is that National Western wrongfully refused to apply the Rider's total disability premium waiver in February 1981.  The parties' respective statute of limitations arguments necessarily focus on when claims stemming from this wrongful refusal accrued.  In National Western's view, they accrued on February 17, 1981 when it communicated its refusal to apply the Rider's premium waiver

provision.  In the Sturdevants' view, their claims did not accrue until Harold
Sturdevant died, because only then did their rights under the Policy vest.  Both
parties rely on authority from other jurisdictions supporting their theory of the
case.  Ultimately, the Court finds the former more persuasive.

This Court, as with the parties and Judge DeSoto, has not uncovered any
opinion from the Montana Supreme Court or other provision of Montana law that
clearly dictates the outcome in this case.  To be sure, under Montana law, the
beneficiary under a life insurance policy generally has no vested rights under the
policy until the insured's death.  *Thrivent Fin. for Lutherans v. Andronescu*, 300
P.3d 117, 119–120 (Mont. 2013).  But this principle does not answer the question
of when a cause of action for the wrongful termination of a life insurance policy or
the refusal to accept a premium waiver accrues.  Courts directly presented with this
question have admittedly reached differing conclusions.

The Sturdevants place significant reliance on the Michigan Court of
Appeal's unpublished disposition in *Payne v. Ohio National Life Assurance
Corporation*, 2019 WL 6173674 (Mich. Ct. App. 2019).[3]  (Doc. 32 at 2–4, 6.)  In

---

[3] In support of their objection to Judge DeSoto's resolution of the statute of limitations issue, the
Sturdevants only point to two other cases, one from the California Supreme Court, *Cook v. Cook*,
111 P.2d 322 (Cal. 1941), and one from the South Carolina Supreme Court, *Shuler v. Equitable
Life Assur. Society of the United States*, 193 S.E. 46 (S.C. 1937).  Both cases are cited simply for
the proposition that the beneficiary of a life insurance policy does not have vested rights in the
policy until the insured's death.  (Doc. 32 at 2–4, 6.) As discussed below, reliance on out of state
cases for this proposition is unnecessary because this principle is firmly established in Montana.
Nonetheless, this principle, standing alone, does not dictate resolution of the statute of limitations

*Payne*, Ms. Payne sued her husband's life insurer in 2017 following its refusal to pay the policy's proceeds upon his death. *Id.* at *1. The insurer maintained that the policy was terminated for nonpayment of premiums in 1999 and that any claim Ms. Payne may have regarding that termination became time barred long before 2017. *Id.* at 1–2. Ms. Payne argued that the insurer never properly notified her or her husband prior to terminating the policy in 1999, and, that in any event, her claims could not possibly began to accrue until 2017 when her husband died and her rights under the policy vested. *Id.*

The Michigan Court of Appeals began by examining Ms. Payne's claim, concluding that her claim "is not premised upon any allegation that the policy was wrongfully terminated," rather that "the contractually required perquisites to termination of the policy simply did not occur." *Id.* at 3. As such, because she had no vested right in the policy until her husband's death and because "the 'actionable harm' or 'breach' alleged is clearly [the insurer's] refusal to pay death proceeds to [her] under the policy," the Michigan Court of Appeals held her claim accrued upon his death in 2017. *Id.* The Michigan Court of Appeals was clear, however, that the insurer could of course substantively defend the action on the premise that it validly terminated the policy in 1999 for nonpayment of premiums. *Id.*

In response, National Western predominately points to the Appellate Court

_____

question at issue.

of Illinois' decision in *Draper v. Frontier Insurance Company*, 638 N.E.2d 1176 (Ill. App. Ct. 1994).  (Doc. 33 at 11.)  In *Draper*, Ms. Draper sued her husband's life insurer after it refused to pay under the policy following his death.  *Id.* at 1177.  Ms. Draper "alleged that, while [her husband] was alive," the insurer "wrongfully 'terminated' the policy and that, as a named beneficiary, she was entitled to collect because the policy was still in force."  *Id.*  Ms. Draper's main argument on appeal was that "the limitations period [on her claim] did not begin until" her husband died, because "only then did [she] acquire the right to sue on the policy."  *Id.* at 1178.

The Appellate Court of Illinois rejected this contention, including instead that her "cause of action for wrongful cancellation accrued when her husband's identical cause of action accrued."  *Id.*  The substance of this ruling was that a statute of limitation runs against the right of action, not the holder of the claim, and that if a beneficiary could "sue for wrongful cancellation after the limitations period would have run against the insured on the same cause of action," then the beneficiary would have a "better right to enforce the contract than the insured himself possessed."  *Id.* at 1179.  Accordingly, because Ms. Draper's suit "is not merely one to recover on the policy, but also one for the wrongful cancellation of the policy," the Appellate Court of Illinois concluded that the limitations period on such claims began to run when they did for the insured.  *Id.*  To hold otherwise, in

its view, would "add an indefinite number of years to the limitations period applicable to a cause of action for the wrongful cancellation of a life insurance policy."  The Court agrees.

*Draper*, as opposed to *Payne*, more accurately describes how Montana law operates in this specific statute of limitations context.  Specifically, as Judge DeSoto correctly noted, it is a well-established contractual principle that a third-party beneficiary, such as the beneficiary of a life insurance policy, possess rights equal, but not greater, to those held by the original promisee.  *See Harman v. MIA Serv. Contracts*, 858 P.2d 19, 22 (Mont. 1993) (citing Restatement (Second) of Contracts § 304 for the principle that a "promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty"); *see also Dick Anderson Const., Inc. v. Monroe Const. Co. L.L.C.*, 221 P.3d 675, 685 (Mont. 2009) (citing 13 Williston on Contracts § 37:1 with approval, which provides "the third party is treated no differently with respect to the enforcement of the promise than a party in traditional privity of contract").

If this Court were to permit the Sturdevant's to advance claims against National Western stemming from its refusal to apply the Rider's premium waiver in February 1981, it would be acting in contravention to a basic principle of contract.  Namely, that a third-party beneficiary, such as the Sturdevants, do not

possess any greater right to enforce the Policy than Harold Sturdevant did.  To hold otherwise would "add an indefinite number of years to the limitations period applicable" to the claims at issue.  *Draper*, 638 N.E.2d at 1180.

Indeed, it is apparent that Ms. Sturdevant was aware that the Policy had lapsed nearly 30 years ago in February of 1980, when she wrote a letter on husband's behalf attempting to have it reinstated.  (Docs. 25-6; 25-7.)  And the Sturdevants' efforts to reinstate the Policy or otherwise have the Rider applied persisted for decades.  (Docs. 25-12; 25-15; 25-16; 25-17.)  Why no legal action was initiated on Mr. Sturdevants' behalf is unclear, but any cause of action stemming from National Western's termination of the Policy in 1979 or refusal to apply the Rider in 1980 accrued long before the 8 years preceding the filing of the Sturdevants' 2020 lawsuit.  In short, the Sturdevants' claims are time barred.

The Court take this opportunity to note that even if the statute of limitations issue were resolved differently (i.e. in favor of the Sturdevants) that would not change the fact that Judge DeSoto concluded National Western properly terminated the Policy in 1979 and permissibly refused to apply the Rider's premium waiver in 1981.  The Sturdevants do not directly object to this legal conclusion and the Court does not find it clearly erroneous.  This result similarly extinguishes their claims.

To the extent the Sturdevant's third category of objections could be

12

construed as objecting to this legal conclusion, such objections are unavailing for the reasons stated below. As noted above, the Sturdevants third category of objections are aimed at what they contend to be Judge DeSoto's improper resolution of disputed issues of fact.  The Court need not engage with these objections on the merits because the Sturdevants have utterly failed to demonstrate how such factual issues are properly categorized as disputed.  When contesting a summary judgment motion, one must point to evidence in the record that places a fact in dispute.  L.R. 56.1(b); Fed. R. Civ. P. 56(c)(1), (e).  Judge DeSoto explained this to the Sturdevants at length in her Findings and Recommendation because they often offered little more than "disputed" in response to an undisputed fact enumerated by National Western.  (Docs. 29; 31 at 30–32).  They were apparently undeterred because their third category of objections merely readvances this unavailing and already rejected approach.

For example, the Sturdevants third objection states that Judge DeSoto's "Findings and Recommendations contains numerous statements that are indisputably issues of fact," but never articulates how her factual conclusions are disputed by contrary evidence in the record.  (Doc. 32 at 2.)  Additionally, their sixth objection enumerates a factual conclusion of Judge DeSoto before simply stating "This fact is disputed." (*Id.* at 4.)  The remaining objections within this category do little more than claim "there is an issue of fact" without ever

13

articulating why or how that is so.  The Court will not do the Sturdevants' work for them and saying facts are disputed does not make them so.  Without more, the Court has no choice but to conclude there are no factual impediments to summary judgment.  In short, the third category of objections is overruled.

Accordingly, IT IS ORDERED that the Sturdevants' objections (Doc. 32) are OVERRULED in part and SUSTAINED in part, as set forth previously in this Order.

IT IS FURTHER ORDERED that Judge DeSoto's findings and recommendation (Doc. 31) is ADOPTED in full, absent the one scrivener's error as to the date of Harold Sturdevant's death (Doc. 31 at 11).

IT IS FURTHER ORDERED that the Sturdevants' motion (Doc. 15) is DENIED and National Western's motion (Doc. 22) is GRANTED.

The Clerk of Court is directed to enter judgment in National Western's favor and close the case file.

DATED this 19th day of August, 2021.

_Dana L. Christensen_
Dana L. Christensen, District Judge
United States District Court